UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ESTATE OF JERRY L. BYLER,<br><br>        Plaintiff,<br>    vs.<br><br>ALASKAN LEADER, Official No. 558637, its Engines, Machinery, Appurtenances, etc., *In Rem*, and ALASKAN ADVENTURE TOURS, *In Personam*,<br><br>        Defendants,<br><br>CITY AND BOROUGH OF YAKUTAT,<br><br>        Intervenor. | Case No. 3:10-cv-00055-HRH-JDR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE PRIOR MOTIONS FOR ARREST WARRANT AND APPOINTMENT OF SUBSTITUTE CUSTODIAN AND FINDINGS REGARDING ALL PENDING ISSUES**<br><br>Docket 100 |

        Plaintiff filed the instant Motion at Docket 100. The Intervenor, City and Borough of Yakatut (CBY) filed a Partial Opposition at Docket 104. Plaintiff filed a Reply at Docket 107 and CBY filed a Surreply at Docket 108. The court deems the

Surreply properly filed and reviews all of the above documents for consideration with this motion. This Order is also intended to address any lingering issues from the evidentiary hearing on August 23, 2010 and all issues under advisement by the magistrate judge. Many of the issues raised by CBY are not ripe. The court encourages the settlement of these issues through early motion practice.

## I. Factual History

The parties have a long, involved history. In November of 2008, CBY won an Alaska Superior Court action against AAT and began foreclosing on its assets to enforce a tax lien, interest and attorney's fees. Prior to the judgement, AAT transferred all of its assets to its owner, Kimberly Riedel-Byler. Ms. Riedel-Byler then transferred all of the assets to ABC Leasing, LLC, of which she was the sole owner. A subsequent State court action resulted in a second judgment against AAT in favor of CBY in March of 2010. Upon examination of the transfers, the State court deemed them fraudulent and awarded CBY additional attorney's fees.

On July 7, 2008, prior to the entry of the second judgment, and prior to AAT's bankruptcy filings, Ms. Riedel-Byler, acting on behalf of AAT, entered into a 2.5 million dollar settlement with Darren Byler, her husband, to settle a wrongful death claim for Jerry Byler's estate. Darren Byler is Jerry Byler's son. Kimberly Riedel-Byler is Jerry Byler's daughter-in-law.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd  2

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 2 of 17

The July 7, 2008 agreement, Exhibit A to Docket 8, purports to settle the Estate's unspecified claim for 2.5 million dollars. The declaration of Darren Byler, at Docket 6, states that the 2.5 million dollar settlement was for the wrongful death claim of the estate of Jerry L. Byler. According to the agreement, the debt is secured by creating a priority under the Vessel's marine mortgage. The first party was given full control over the Vessel and it's equipment until July 7, 2010 when the debt became due. On September 5, 2008, ABC Leasing, LCC (ABC), signed a document entitled "Preferred Mortgage of Vessel" acknowledging the 2.5 million dollar debt to the Estate and "mortgaging" the Alaskan Leader to the Estate with additional covenants creating possible additional indebtedness if the covenants were not met.

After a State court jury found that AAT's transfer of its assets were fraudulent conveyances, but before entry of the second judgment against AAT and Ms. Riedel-Byler, the Estate filed this action, immediately accompanied by the March 16, 2010 motion for arrest of the Alaskan Leader that the Estate now seeks to withdraw.

## II. Procedural History

The procedural history in this case is no less long or complicated. A brief explanation of how the Plaintiff came to file the instant motion is helpful. The magistrate judge denied Plaintiff's initial *Motion to Arrest the Vessel* at Docket 10. In the Order, the court found that the mortgage was likely not *bona fide* and that the

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd  3

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 3 of 17

Alaska Superior Court's rulings referencing fraudulent conveyances might be binding on the parties.[1]  Plaintiff filed a *Motion for Reconsideration* at Docket 12.  Prior to ruling on the motion, the proceedings were stayed pending resolution of a matter involving the parties in federal bankruptcy court.  On June 22, 2010, CBY filed a *Notice of Ripeness for Hearing on Motion [12] for Reconsideration and Motion [27] for Pre-Arrest Hearing* at Docket 41 indicating some issues were ready for this court's consideration.  The parties briefed issues regarding the arrest of the Vessel at Dockets 46, 58, 74, 75, 77, 79 and 80.  The court held an evidentiary hearing on August 23, 2010.

At the evidentiary hearing, the court took CBY's *Motion and Memorandum to Create Interim Receivership*, Docket 71, under advisement.  The court issued an *Order Creating Interim Receivership to Lease and or Operate Vessels* at Docket 95.  This order encompasses several issues argued at the evidentiary hearing.  The Order did not, however, address the arrest of the Vessel or the appointment of a substitute custodian.  Due to the nature of the agreed Receivership and the status of the Vessels per the Order, the court issued an order at Docket 96 regarding Plaintiff's Motion for Relief at Docket 74.  Therein, the court directed the Plaintiff to clarify how the issues of arrest and the appointment of a

---

[1] The magistrate judge believes that the preferred ship mortgage claimed by the Estate is void because the fraudulent conveyance judgment held the transfer of the Vessels from AAT to ABC was void.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd   4

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 4 of 17

substitute custodian should be handled in light of the Order creating a receivership. The Plaintiff then filed the Motion at Docket 100 asking the court to strike those motions.

### III. Issues Presented

This order will address the issues outlined in Plaintiff's *Motion to Strike* and all issues under advisement from previous motions addressed at the evidentiary hearing on August 23, 2010. Specifically, this order addresses the following issues: 1) whether to grant the Plaintiff's motion to strike motions to arrest the vessel Alaskan Leader and appurtenances; 2) whether to grant the Plaintiff's motion to strike motions to appoint a substitute custodian; 3) whether the court has *in rem* jurisdiction to hear this matter; 4) whether the Plaintiff has made a prima facie showing regarding the cause of Jerry Byler's death; 5) whether the Plaintiff has authority to bring the current action as "subsequent administration" of the estate; 6) whether Plaintiff has waived it's right to pursue it's claims; and 7) whether any of Plaintiff's lien claims reach the other vessels, an issue regarding appurtenances.

#### A. Arrest of the Vessel

The court has reviewed the *Plaintiff's Motion to Strike the Motions for Arrest Warrant* and the responsive filings. CBY, the only party to respond to Plaintiff's motion, does not oppose striking the motions to arrest. Considering the

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 5

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 5 of 17

court's previous order regarding the receivership and the positions of the parties, the *Motion to Strike Prior Motions for Arrest Warrant* is GRANTED.

### B. Substitute Custodian

The Plaintiff has also moved the court to strike the motions to appoint a substitute custodian. CBY, the only party to respond to Plaintiff's motion, does not oppose striking the motions to appoint a substitute custodian. Considering the court's previous order regarding the receivership and the positions of the parties, the motion to strike the motions for appointment of a substitute custodian is GRANTED.

### C. *In Rem* Jurisdiction

Typically, in admiralty cases, the court gains *in rem* jurisdiction through the arrest of a vessel. The Estate urges the court to find that jurisdiction has been acquired by consent in this matter. Specifically the Estate argues that the entry of appearance of an attorney for the Vessel constitutes consent to jurisdiction.[2]

The Estate cites three cases from other circuits in support of its position. Citing *State of Louisiana v. Kition Shipping Co., Ltd.*, the Plaintiff argues that *in rem* jurisdiction may be acquired by consent.[3]

> There are two (2) ways for a federal court to properly obtain *in rem* jurisdiction over a vessel: (1) seizure (or

---

[2] *See Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103, 1108(5th Cir. 1985); *Reed v. Steamship Yaka,* 307 F.2d 203, 204-05 (3rd Cir. 1962).

[3] 2010 AMC 769, 773 (M.D. La. 2009).

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd  6

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 6 of 17

arrest, attachment, or process, etc.) of the vessel within the forum court's territorial jurisdiction, and/or (2) consent to jurisdiction.[4]

Plaintiff asserts *Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*,[5] a Fifth Circuit case, and *Reed v. Steamship Yaka*,[6] a Third Circuit case, stand for the proposition that an appearance by a party "without reservation of jurisdictional defenses adequately perfects *in rem* jurisdiction without the actual arrest of the vessel."[7] The Estate elaborates that usually, parties consent to *in rem* jurisdiction in the form of filing a letter or similar bond, making subjection to jurisdiction explicit. The Estate argues this is not necessary, however. The Estate urges that the Vessel's participation, without raising jurisdictional issues, constitutes consent to *in rem* jurisdiction.

The Defendants, including the Vessel, filed their Answer to the Third Amended Complaint at Docket 110. The Answer contained affirmative defenses and answers to each of Plaintiff's claims. The Answer did not contain any objections or assertions disputing jurisdiction over the vessel. Nor has the Vessel filed any explicit objections in this regard.

---

[4]*Id.* (citing *Lee v. Pearcy Marine, Inc.*, 1994 AMC 2827, 1994 WL 759929 (S.D. Tex. 1994).

[5]756 F.2d 1103 (9th Cir. 1985).

[6]307 F.2d 203 (3rd Cir. 1962).

[7]Docket 100, p. 3.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd                    7

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 7 of 17

At the parties' request, the court entered an *Order Creating Interim Receivership to Lease and or Operate Vessels*.[8] The parties agreed that this court has authority to enter such an order. None of the parties objected to the court's jurisdiction to do so.

The case law, though not binding, coupled with the actions of the court regarding the Receivership and the lack of jurisdictional objections by the Vessel convince the magistrate judge to find that the court has *in rem* jurisdiction in this matter despite not arresting the Vessel or appointing a substitute custodian.

The magistrate judge finds that the court also has *in rem* jurisdiction in this matter pursuant to the Jones Act and common law granting jurisdiction over wrongful death actions.

The magistrate judge previously asked the parties to brief the issue of whether Mr. Byler was an independent contractor, employee, or seaman employed by AAT at the time of his death. The facts of the case which have come to light show that Jerry Byler was employed by AAT in some capacity at the time of his death. The Estate claims that Jerry Byler was "the main operator of the Sound Adventure, a landing craft used for transport of crew, guests and supplies to and

---

[8] *See* Docket 95.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd    8

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 8 of 17

from the [Alaskan Leader]."[9]  It is known that Jerry Byler was paid a daily wage by AAT.[10]  There is some dispute as to whether he should be classified as a "seaman."

The magistrate judge declines to make a finding to that effect at this time as the Estate may proceed with the case as part of an action to enforce a maritime lien regardless of whether Mr. Byler was a seaman or not.[11]  The classification effects priority, an issue that will be taken up at a much later time in the case.  Seamen retain the right to bring a wrongful death claim under the Jones Act if the death occurs during the course of employment and is caused by the employer's negligence.[12]  Seamen also may bring a wrongful death action under general maritime law if the death is caused by unseaworthiness, strict liability or negligence of a non-employer third party.[13]

---

[9] *Third Amended Complaint for Wrongful Death, to Foreclose Preferred Marine Mortgage or in the Alternative, for Wrongful Death*, Docket 85, p. 3.

[10] *Id.*

[11] *See,* Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 9-1 (4th ed. 2004).

[12] 46 U.S.C. § 30104.

[13] *See Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd   9

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 9 of 17

Even if the court were to determine that Jerry Byler was not a seaman, non-seaman, including employees and guests, may bring wrongful death claims under general maritime law.[14]

### D. Prima Facie Showing

Prior to the arrest of a vessel, or, in this case, prior to proper assertion of *in rem* jurisdiction, the complaining party must make a prima facie showing of negligence or unseaworthiness. In *Ashcroft v. Iqbal*, the Supreme Court held that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[15] The Estate here must give the court more than conclusory statements regarding the fate of Jerry Byler.

In their *Third Amended Complaint*, the Estate claims that Jerry Byler was directed to drain the Boston Whaler (Whaler) and the Mako Skiff (Skiff) tied up to the back of the Alaskan Leader just prior to his disappearance during an AAT charter on which he was employed.[16] The Estate alleges that the ramp used to access the Whaler and Skiff was slippery and wet and lacked a non-skid surface to

---

[14] *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001).

[15] 129 S.Ct. 1937, 1950 (2009) (citations omitted).

[16] Docket 85, p. 3.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 10

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 10 of 17

prevent slipping.[17] One of Jerry Byler's gloves was found inside the Skiff following his disappearance, indicating to the Estate that he was on the ramp prior to his disappearance.[18]

CBY urges the court to examine statements given by Karen Byler, the owner of AAT, to the Alaska State Troopers and the Estate's failure to bring a wrongful death action as part of the original probate matter as evidence that the claim is not valid.[19] CBY also notes that no one saw Mr. Byler fall into the water and no one knows if the negligence of the Vessel owner is to blame for his death. But this is not the standard applicable here.

While the magistrate judge agrees that the dealings of AAT and the Bylers are fraught with fraud, the magistrate judge finds that the record shows a possibility that proof will come forward after discovery and that the *Third Amended Complaint* makes a prima facie case on its face. It is premature for the court to determine now that Mr. Byler's death was proximately caused by negligence or unseaworthiness. It is enough that the Estate has made a prima facie case in compliance with *Iqbal*. As the magistrate judge cannot conclude at this stage of the case that the Plaintiff will be unsuccessful, he deems the pleading standard met and

---

[17] *Id.*

[18] *Id.*

[19] *See Motion and Memorandum in Support of Motion for Pre-Arrest Hearing,* Docket 27.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 11

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 11 of 17

finds that there is prima facie evidence to support a wrongful death action. The other parties' concerns regarding the Estate's complaint should be addressed more fully early in motion practice.

### E. Subsequent Administration of the Estate

CBY argues that the court does not have jurisdiction to decide issues in this matter because the Estate does not have standing to bring a claim for wrongful death. The magistrate judge finds otherwise on the present state of the record.

The Estate of Jerry L. Byler was probated in Arkansas by his widow, Lena Byler.[20] That probate action was administered without reference to any wrongful death action.[21] The probate matter was closed by court order on June 10, 2008.[22] Darren Byler filed a petition for subsequent administration in Alaska on June 16, 2008, pursuant to Alaska Statute 13.16.655.[23] The Statute allows for subsequent administration if property is discovered "after an estate has been settled and the

---

[20] *CBY's Hearing Memorandum*, Docket 58, p. 2.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 3.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 12

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 12 of 17

personal representative discharged or after one year after a closing statement has been filed."[24]

CBY argues that the estate knew or should have known of the potential for a wrongful death claim before the closure of the original probate matter, thus making the subsequent administration action improper. In their filing at Docket 104, CBY cites an unsigned deposition transcript from Darren Byler's testimony as evidence that he knew of the potential for a claim before the closing of the original probate matter.[25] While CBY may be correct that any subsequent administration is improper, a decision by the court at the arrest phase of the action is premature. The deposition cited by CBY is not properly before the court for consideration. The parties must wait until discovery is conducted before the court can entertain this issue. Additionally, CBY's standing challenge goes to the Alaska State probate matter and that State court granted Darren Byler authority to pursue a subsequent administration.

---

[24]**Sec. 13.16.655. Subsequent Administration.** If other property of the estate is discovered after an estate has been settled and the personal representative discharged or after one year after a closing statement has been filed, the court upon petition of any interested person and upon notice as it directs may appoint the same or successor personal representative to administer the subsequently discovered estate. If a new appointment is made, unless the court orders otherwise, the provisions of A.S. 13.06 - A.S. 13.36 apply as appropriate; but no claim previously barred may be asserted in the subsequent administration.

[25]*See* Docket 104, p. 8 n. 9.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 13

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 13 of 17

The Magistrate Judge finds that the Estate has standing to pursue the wrongful death claim at this time.

F. Waiver

CBY argues that when the Estate entered into a written settlement of the alleged wrongful death claim with AAT, it made the decision to settle that claim in lieu of an unliquidated maritime lien or preferred ship mortgage for wrongful death.[26] As such, they cannot now assert another lien for a claim arising out of the same incident. The Estate argues that CBY's argument is flawed. The Estate further argues that the issue of waiver is not appropriately considered at this time and is more appropriately addressed as a summary judgment issue later in the case.

The Estate cites three cases in support of their position, while CBY argues to distinguish the current facts from those cases.[27] The applicable rule of law with respect to waiver is that "[m]aritime liens can be waived expressly or by implication based on the lienholder's actions."[28] And, in order to waive a lien, "clearly

---

[26] *See* Docket 58, pp. 13-17.

[27] *Sunrise Shipping, Ltd. v. M/V American Chemist, et. al.*, No. 96-2849, 1997 U.S. Dist. LEXIS 16087, *5 (E.D. La., Oct. 8, 1997); *Point Landing, Inc. v. Alabama Dry Dock & Shipping Co.*, 261 F.2d 861 (5th Cir. 1958); *United States v. Ex-USS Cabot/Dedalo*, 179 F.Supp.2d 697, 706 (S.D. Texas, Sept. 14, 2000).

[28] *Ex-USS Cabot/Dedalo*, 179 F.Supp.2d at 706.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 14

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 14 of 17

manifested intention to forego the lien" is necessary.[29]  Further, the party seeking to attack a lien bears a "heavy burden of proof."[30]

In *Sunrise Shipping, Ltd.,* the court addressed the issue of whether the claimant had waived his right to a maritime lien by entering into a settlement with the ship owner.[31]  The court stated that "[t]here is a strong presumption against the waiver of a maritime lien."[32]  And, that "[a]ny opponents of a lien must prove that the creditor purposefully intended to forego both the lien and the valuable privilege that it affords and look solely to the owner's personal credit."[33]

CBY argues that when the Estate entered into a settlement with Ms. Riedel-Byler's company, it waived its right to pursue any wrongful death action in court.  The magistrate judge has not seen any evidence that indicates the Estate's explicit intent in this respect.  The high standard has not been met.  The magistrate judge declines to make a finding of waiver of the Estate's claim.

---

[29]*Id.* at 706-07 (*quoting* Schoenbaum,§ 9-7).

[30]*Id.* at 707.

[31]No. 96-2849 at *5.

[32]*Id.* (citing *Gulf Oil Trading v. M/V Caribe Mar*, 757 F.2d 743, 750 (5th Cir. 1958); s*ee also Point Landing, Inc.*, 261 F.2d at 867 ("The mere taking of a promissory note for the debt or a chattel mortgage on the vessel does not alone or together amount to a waiver."); *and see Ex-USS Cabot/Dedalo,* 179 F.Supp.2d 697 (S.D. Texas Sept. 14, 2000).

[33]*Id.*

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 15

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 15 of 17

### G. Appurtenances/Whether Plaintiff's Lien Claims Reach Other Vessels

The magistrate judge has thoroughly addressed the issue of appurtenances in previous orders.[34] The court found that "the Vessel Gulf Coast Responder, formerly known as the Sound Adventure, the Boston Whaler and the Mako Skiff are appurtenances to the Alaskan Leader while the helicopter pad/floating platform is not."[35] Plaintiff has challenged this finding and is currently seeking review by the assigned District Court Judge, however the findings of the magistrate judge recalled above stand pending alteration, if any, by the District Court Judge. The items deemed to be appurtenances are likewise subject to Plaintiff's lien claims at this time.

### IV. Conclusion

The magistrate judge has considered the issues raised in *Plaintiff's Motion to Strike* and all remaining issues raised by CBY and the Estate as part of previous filings and the matters discussed at the August 23, 2010 evidentiary hearing. This order is intended to address all matters pending and previously taken under advisement by the magistrate judge. The magistrate judge HEREBY ORDERS that the MOTIONS FOR ARREST WARRANTS BE STRICKEN, that the MOTIONS TO APPOINT A SUBSTITUTE CUSTODIAN BE STRICKEN, that the

---

[34] *See* Docket 95, p. 2, paragraph 2; Docket 103, *Order Regarding Plaintiff's Objection to Order Creating Interim Receivership*, pp. 3-6.

[35] Docket 103, p. 6.

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd   16

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 16 of 17

COURT HAS *IN REM* JURISDICTION over this matter, that the PLAINTIFF HAS MADE A PRIMA FACIE SHOWING sufficient to satisfy the threshold requirements set forth in *Iqbal*, that there is INSUFFICIENT EVIDENCE TO PREVENT THE SUBSEQUENT ADMINISTRATION OF THE ESTATE at this time, that there is INSUFFICIENT EVIDENCE at this time TO SHOW THAT THE ESTATE HAS WAIVED ITS RIGHT TO PURSUE THIS ACTION, and that the PREVIOUS FINDINGS REGARDING THE APPURTENANCES TO THE VESSEL STAND. It is SO ORDERED.

DATED this __12th__ day of November, 2010, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

10-cv-055-HRH-JDR Byler Order @ 100 Granting Motion to Strike Motions for Arrest Warrant and Appointment of Substitute Custodi_mtd.wpd 17

Case 3:10-cv-00055-HRH   Document 116   Filed 11/12/10   Page 17 of 17